1

2

3

4

5    UNITED STATES DISTRICT COURT

6    EASTERN DISTRICT OF WASHINGTON

7    ANTONIO NEWBORN,

8                          Plaintiff,

9          v.

10   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

11                          Defendant.

12

NO:  2:12-CV-3153-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

13       BEFORE THE COURT are the parties' cross motions for summary

14   judgment.  ECF Nos. 24, 27.  D. James Tree represents Plaintiff Antonio Newborn.

15   Daphne Banay represents Defendant Carolyn W. Colvin, Acting Commissioner of

16   Social Security Administration.  The Court has reviewed the administrative record

17   and the parties' completed briefing, and is fully informed.  For the reasons

18   discussed below, the Court grants Defendant's motion and denies Plaintiff's

19   motion.

20

1

**JURISDICTION**

2       The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g),

3   1383(c)(3).

4

**STANDARD OF REVIEW**

5       A district court's review of a final decision of the Commissioner of Social

6   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7   limited: the Commissioner's decision will be disturbed "only if it is not supported

8   by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9   1158 (9th Cir. 2012) (quotation and citation omitted).  "Substantial evidence"

10  means relevant evidence that "a reasonable mind might accept as adequate to

11  support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated

12  differently, substantial evidence equates to "more than a mere scintilla[,] but less

13  than a preponderance."  *Id.* (quotation and citation omitted).  In determining

14  whether this standard has been satisfied, a reviewing court must consider the entire

15  record as a whole rather than searching for supporting evidence in isolation.  *Id.*

16       In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the Commissioner.  If the evidence in the record "is

18  susceptible to more than one rational interpretation, [the court] must uphold the

19  ALJ's findings if they are supported by inferences reasonably drawn from the

20  record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citations omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id.* § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful

activity," the Commissioner must find that the claimant is not disabled. *Id.*
§ 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis
proceeds to step two. At this step, the Commissioner considers the severity of the
claimant's impairment. *Id.* § 416.920(a)(4)(ii). If the claimant suffers from "any
impairment or combination of impairments which significantly limits [his or her]
physical or mental ability to do basic work activities," the analysis proceeds to step
three. *Id.* § 416.920(c). If the claimant's impairment does not satisfy this severity
threshold, however, the Commissioner must find that the claimant is not disabled.
*Id.*

At step three, the Commissioner compares the claimant's impairment to
several impairments recognized by the Commissioner to be so severe as to
preclude a person from engaging in substantial gainful activity. *Id.*
§ 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the
enumerated impairments, the Commissioner must find the claimant disabled and
award benefits. *Id.* § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity
of the enumerated impairments, the Commissioner must pause to assess the
claimant's "residual functional capacity." Residual functional capacity ("RFC"),
defined generally as the claimant's ability to perform physical and mental work

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). *Id.* § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id.* § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 9, 2008, Plaintiff filed a Title XVI application for supplemental security income, and alleged disability onset as of that date.  Tr. 11; 83; 312-314.  The Commissioner denied Plaintiff's application initially and on reconsideration.  Tr. 178-182; 183-185.  Plaintiff timely filed a request for hearing (Tr. 190), and appeared before Administrative Law Judge Payne ("ALJ Payne") at three hearings held on January 13, 2011 (Tr. 40-56), March 29, 2011 (Tr. 57-59), and June 3, 2011 (Tr. 60-74).

On July 12, 2011, ALJ Payne found that Plaintiff was not disabled.  Tr. 117-135.  The Appeals Council denied Plaintiff's request for review (Tr. 142-147) on October 24, 2012, which rendered the decision the Commissioner's final decision. Thereafter, Plaintiff sought the Court's review of that decision.  *See* Tr. 148-157; ECF No. 1.  On March 14, 2013, the Court granted the parties' request to remand the case pursuant to sentence six of 42 U.S.C. § 405(g) for a *de novo* hearing.  Tr. 158-159; ECF No. 9; *see also* ECF No. 8.  The hearing transcript contained numerous inaudible sections noted in the medical expert's testimony, which rendered the record incomplete.  *Id.*

On June 10, 2014, Administrative Law Judge Kennedy (the "ALJ" or "ALJ Kennedy") held a new hearing on remand. Tr. 75-114. On October 21, 2014, the ALJ made findings and issued a decision. Tr. 9-30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 9, 2008. Tr. 14-15. At step two, the ALJ found that Plaintiff had severe impairments, but at step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 15-17. The ALJ then determined that Plaintiff had the RFC to perform light work with certain specified limitations. Tr. 17-28. At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a material handler, sales route driver, and fish cleaner. Tr. 28.

However, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was capable of performing representative occupations, such as packing line worker, bakery worker, conveyor line worker, and hand packager. Tr. 29. The ALJ found that these occupations exist in significant numbers in the national economy. *Id*. Because Plaintiff was capable of other work in the national economy, the ALJ found at step five that Plaintiff was not disabled under the Social Security Act. Tr. 29-30.

On November 25, 2014, Plaintiff submitted objections to the Appeals Council (Tr. 6-8), which the Appeals Council rejected (Tr. 1-4), making the ALJ's

decision the Commissioner's final decision subject to judicial review.  *See* 42

U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1484(a); 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income under Title XVI of the Social Security Act.

Plaintiff raises the following three issues for the Court's review:

(1) Whether the ALJ erred by disregarding medical expert testimony from the hearing before ALJ Payne on January 13, 2011;

(2) Whether the ALJ erred in assessing the weight given to mental health and medical opinion evidence; and

(3) Whether the ALJ improperly relied on testimony from the vocational expert in response to an incomplete hypothetical.

*See* ECF No. 24 at 12, 14, 26.

## DISCUSSION

### A. Incomplete transcript

When a Social Security hearing transcript is lost or inaudible, good cause

exists to remand and start anew pursuant to sentence six of 42 U.S.C. § 405(g).

Indeed, in drafting § 405(g), Congress considered exactly this situation.  H.R.Rep.

No. 96–144, at 59 (1980):

> Where for example, the tape recording of the claimant's oral hearing is lost or *inaudible*, or cannot be otherwise transcribed, or where the claimant's files cannot be located or are incomplete, good cause

would exist to remand the claim to the Secretary for appropriate action.

H.R.Rep. No. 96–944, at 59 (1980) (emphasis added).

When an ALJ conducts a *de novo* hearing, the ALJ is not bound by previous decisions. *Statement before the Committee on Ways and Means Subcommittee on Social Security*, Statement of Michael J. Astrue, Commissioner, Social Security Administration, June 27, 2012 (stating that an ALJ is not bound by determinations rendered at the initial and reconsideration levels).  Moreover, "[a]n ALJ reviews any new medical and other evidence that was not available to prior adjudicators . . . [and] considers a claimant's testimony and the testimony of medical and vocational experts called for the hearing."  *Id*.; *see, e.g.*, *Salling v. Bowen*, 641 F. Supp. 1046, 1053 (W.D. Va. 1986) (stating that at a *de novo* hearing "the ALJ looks at the matter from a fresh perspective and, for the first time, hears oral testimony and looks at a live person, rather than reviewing a stale record").  In other words, the ALJ considers *new* testimony, not the opposite.

Here, Plaintiff faults ALJ Kennedy for not considering the testimony of two independent medical experts who testified at the January 13, 2011 hearing at ALJ Payne's request.  *See* ECF No. 24 at 12-14; Tr. 22.  The parties, however, agreed that "significant portions" of that hearing transcript are indiscernible.  ECF No. 8 at 1-2.  Specifically, the parties represented that "there are *numerous* inaudible

1  sections noted in the medical expert's testimony and therefore the administrative

2  record is *incomplete*." *Id.* (emphasis added).  The parties sought to remand the case

3  for a *de novo* hearing pursuant to 42 U.S.C. § 405(g).  *See id*.  The Court remanded

4  the case consistent with the parties' request.  Tr. 158-159; ECF No. 9.

5      On June 10, 2014, ALJ Kennedy held a new hearing, and requested the

6  testimony of vocational expert Kimberly Mullinax.  Tr. 77-78.  Notably, Plaintiff

7  did not call any experts or witnesses to testify other than himself.  Tr. 82.  Nearly

8  one year prior, and again at the commencement of the hearing, the ALJ discussed

9  with Plaintiff's counsel evidentiary exhibits the ALJ intended to include in the

10 record for consideration.[1]  Tr. 81; 273-274; *see also* Tr. 31-37.  At the hearing, the

11 ALJ informed Plaintiff that reasonable efforts were made to develop the complete

12 record, but cautioned that it is Plaintiff's opportunity to present his case.  Tr. 78-

13 79; *see also* 20 C.F.R. § 416.912.  The ALJ further explained that it is the ALJ's

14 "job to independently consider the evidence and reach [his] own conclusions."  Tr.

15 78-79.

16      Given the circumstances, the Court finds that the ALJ did not err in refusing

17 to consider certain audible portions of medical expert testimony from the January

18

19 [1]    The "incomplete" January 13, 2011 hearing transcript was not included in

20 the proposed compilation.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

13, 2011 hearing transcript. Plaintiff's argument that an ALJ must consider every medical opinion in the record, citing 20 C.F.R. §§ 404.1527(b)–(c), 416.927(b)–(c), is misplaced because Drs. Cools' and Francis' testimony was no longer part of the record. *See* ECF No. 8 at 1-2; Tr. 31-37. Plaintiff's argument that "exchanges that are capable of reasonable interpretation should have been considered by the ALJ" is unsupported. *See* ECF No. 28 at 3. Rather, because the prior record is incomplete, the parties chose to start anew.[2] *Id.* It would have been illogical and improper for the ALJ to rely on out-of-context fragmentary testimony, especially given the parties' inability to cross-examine Drs. Cools and Francis on their

---

[2]     Plaintiff's argument that the Appeals Council erred in relying on sections of the HALLEX is not helpful because it is not binding law. *See Clark v. Astrue,* 529 F.3d 1211, 1216 (9th Cir. 2008) (The "HALLEX is strictly an internal Agency manual, with no binding legal effect on the Administration or this court."); *Moore v. Apfel,* 216 F.3d 864, 869 (9th Cir. 2000) ("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual."); *see also* ECF No. 28 at 2-3. The Court notes, however, that like sentence six of 42 U.S.C. § 405(g), HALLEX I-2-1-85C2 provides that an inaudible transcript is deemed incomplete for purposes of a *de novo* hearing.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    testimony.  *See, e.g.*, *Pratts v. Chater*, 94 F.3d 34, 38 (2d. Cir. 1996) (stating that

2    "without the benefit of a complete transcript" an ALJ's reliance on only a portion

3    of an expert's testimony does not constitute substantial evidence).

4        The ALJ did not overlook critical information as Plaintiff suggests.  Drs.

5    Cools and Francis (whom ALJ Payne previously selected) offered no opinions

6    other than those proffered at the prior hearing.  ALJ Kennedy disregarded Drs.

7    Cools' and Francis' piecemeal testimony at the new hearing "because large

8    portions of the [prior] hearing were inaudible, including the testimony of the

9    medical experts . . . ."  Tr. 22 n.2.  Moreover, ALJ Kennedy had unfettered

10   discretion (and chose not) to recall Drs. Cools and Francis to testify again, or to

11   request new medical experts.  *See* 20 CFR § 416.1444 ("A hearing is open to the

12   parties and to other persons the administrative law judge considers necessary and

13   proper.").

14       Finally, Plaintiff argues that ALJ Kennedy's failure to consider selective

15   portions of incomplete testimony constitutes harmful error, while simultaneously

16   reaping the benefit of a *de novo* hearing.  However, the Court cannot reach a

17   harmless error determination because the ALJ clearly did not err in disregarding

18   incomplete piecemeal testimony from the prior January 13, 2011, hearing.

19   //

20   //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

### B.  Mental health and medical opinions

Plaintiff argues that the ALJ erred in rejecting Plaintiff's mental health examining physicians and providers, Jenifer Schulz, Ph.D., Christopher Clark, L.M.H.C., and Russell Anderson, M.S.W. in favor of two state agency consultants. ECF No. 24 at 14-21.  Plaintiff also faults the ALJ for rejecting medical opinion evidence proffered by Andres Laufer, M.D., Alfred Scottolini, M.D., and Jessica Wynne, ARNP[3] regarding Plaintiff's physical limitations.  ECF No. 24 at 21-26.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

_____

[3]    Plaintiff provides no argument in support of his bare statement that the ALJ improperly rejected Ms. Wynne's opinion.  Therefore, Plaintiff has waived any argument as to the ALJ's rejection of Ms. Wynne's opinion.  *See Bray*, 554 F.3d at 1226, n.7 (stating that an argument is waived because it was not addressed in a party's brief).

1  reviewing physician's.  *Id.*  In addition, the regulations give more weight to

2  opinions that are explained than to those that are not, and to the opinions of

3  specialists concerning matters relating to their specialty over that of nonspecialists.

4  *Id.* (citations omitted).

5        If a treating or examining physician's opinion is uncontradicted, an ALJ may

6  reject it only by offering "clear and convincing reasons that are supported by

7  substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

8  (citation omitted).  "However, the ALJ need not accept the opinion of any

9  physician, including a treating physician, if that opinion is brief, conclusory, and

10  inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*,

11  554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).  "If a treating

12  or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

13  may only reject it by providing specific and legitimate reasons that are supported

14  by substantial evidence."  *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

15  F.3d 821, 830-31 (9th Cir. 1995).

16        "Where an ALJ does not explicitly reject a medical opinion or set forth

17  specific, legitimate reasons for crediting one medical opinion over another, he

18  errs."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted).

19  "In other words, an ALJ errs when he rejects a medical opinion or assigns it little

20  weight while doing nothing more than ignoring it, asserting without explanation

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (stating that courts may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

### 1.  Jenifer Schultz, Ph.D.

Plaintiff argues that the ALJ erred in assigning limited weight to examining clinical psychologist Jenifer Schultz, Ph.D.'s opinion in favor of the opinions of nonexamining state agency psychologists James Bailey, Ph.D. and Mary A. Gentile, Ph.D. because Plaintiff (1) sporadically reported mental health complaints; (2) infrequently sought treatment; and (3) engaged in various activities. *See* ECF No. 24 at 14-16; *see also* Tr. 25-26, 28.

The ALJ provided clear and convincing reasons supported by substantial evidence in discrediting Dr. Schultz's opinion in favor of the conflicting opinions of two nonexamining physicians.  The ALJ accorded limited weight to Dr. Schultz's opinion that Plaintiff could not work as of 2009, but accorded significant

weight to Dr. Schultz's finding that Plaintiff was "purposely feigning bad" and "malingering." *See* Tr. 25; 476. The ALJ relied on Dr. Schultz's malingering finding in undercutting various mental health and medical opinions that relied heavily on Plaintiff's subjective accounts evincing symptom magnification. *See* Tr. 21, 26-27. As a result, the ALJ provided specific, convincing reasons for discrediting Plaintiff's testimony as to the extent and nature of his mental health complaints.

The ALJ also limited Dr. Schultz's opinion, in part, because the GAF score was based on Plaintiff's questionable subjective presentation related to his mental health issues. Tr. 21, 25. The ALJ also reasoned that despite Plaintiff's chronic panic attacks and post-traumatic stress disorder complaints, Plaintiff's medical records reveal only sporadic complaints and no treatment for mood or anxiety issues. Tr. 25. To that end, Plaintiff faults the ALJ for limiting Dr. Schultz's opinion due to a lack of anxiety treatment, and argues that his mental illness, chemical dependency, and frequent incarcerations prevented him from seeking treatment. ECF No. 24 at 15-16. Plaintiff relies on *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) as support that failure to seek mental health treatment is not a valid reason to reject an opinion.

However, as Defendant correctly argues, the ALJ did not limit Dr. Schultz's opinion due to Plaintiff's failure to seek treatment. Rather, the ALJ explained that

the treatment records reveal sporadic or no complaints, which tends to show that

Plaintiff's symptoms are not as frequent or severe as he claimed during his

evaluations for benefits.  Tr. 20-21.  The ALJ noted that Plaintiff's treatment has

focused on substance abuse problems.  Tr. 21.  The ALJ found this consistent with

Dr. Schultz's malingering opinion (of which the ALJ credited significant weight).

*See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (stating that a lack of

medical evidence is a proper credibility factor).

    Moreover, the ALJ reasoned that Plaintiff's allegations of chronic,

longstanding debilitating mental symptoms are inconsistent with other evidence in

the record:

> . . . when seen in December 2010, he was fully oriented, with a
> normal affect and cooperative behavior (C33F2). While incarcerated
> in January 2011, he asserted, "I don't need mental tx at this time b/c I
> feel that everything is going good" (C33F18). In February 2011, he
> denied having any mental health problems, and mental status
> examination was normal (33Fl2). In September 2013, he displayed a
> normal affect, full orientation, and cooperative behavior (C38F10). In
> November 2013, he denied having any mental health problems, and a
> mental status examination was normal (C38F8). In April 2014, he
> complained of anxiety over the past six week due to being stressed by
> personal issues in the community (C38F22). It was noted, though, that
> he had never previously sought mental health treatment in the DOC
> (C38F22). When seen three days later, he exhibited a normal mood
> and affect, appropriate behavior, good eye contact, and intact and
> organized thought processes, with no memory deficits, suicidal
> ideation, homicidal ideation, or psychotic symptoms (C38F2l).

1   Tr. 21. Testimony, such as here, that is inconsistent with medical evidence is a

2   proper reason for discounting an opinion.  *See Verduzco v. Apfel,* 188 F.3d 1087,

3   1090 (9th Cir. 1999) (finding that an ALJ properly discredited a claimant's

4   testimony because it was inconsistent with medical evidence and the claimant's

5   own testimony).

6        Finally, Plaintiff faults the ALJ for discounting Dr. Schultz's opinion that

7   his antisocial traits prevent him from working.  ECF No. 24 at 16-17.  Instead, the

8   ALJ relied on Drs. Bailey's and Gentile's opinions because "they are generally

9   consistent with longitudinal evidence" as to Plaintiff's participation in group

10  counseling; cohabitation with other inmates and jail staff; visitation with his and

11  his partner's children; and his visits to the library, movies, church, and substance

12  abuse classes.  Tr. 25-26, 28; *see* 20 C.F.R. 416.927(c)(4).  The ALJ found that this

13  evidence is contradictory to Dr. Schultz's opinion and shows that Plaintiff's

14  antisocial traits do not support a finding that he is prevented from working.  Tr. 26.

15  The ALJ acknowledged that Plaintiff has some mental health limitations, but stated

16  that those limitations are accommodated by the RFC.  Tr. 26.  In addition, the ALJ

17  relied on evidence of Plaintiff's employment at the Port of Tacoma, his job

18  unloading railroad cars, and his work as a janitor as further evidence contradicting

19  Dr. Schultz's opinion.  *Id.*  Plaintiff argues that the ALJ failed to consider that his

20  continual lawless behavior interferes with his ability to maintain employment.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

1    ECF No. 24 at 16-17.  However, the ALJ determined that Plaintiff's criminal

2    history "is not a physical or mental basis for why he cannot work."  Tr. 22.

3         For the above reasons, the Court finds that the ALJ provided legitimate and

4    specific reasons supported by substantial evidence in assigning limited weight to

5    Dr. Schultz's opinion and assigning more weight to Drs. Bailey's and Gentile's

6    opinions given that their opinions are more consistent with the record as a whole.

7    *See* 20 C.F.R. 416.927(c)(4).

8         **2. Christopher Clark, L.M.H.C.**

9         Plaintiff next faults the ALJ for assigning little weight to the opinion of

10   examining mental health therapist Christopher Clark, L.M.H.C.  ECF No. 24 at 17-

11   18; Tr. 24-27.  Plaintiff argues that the ALJ rejected Mr. Clark's opinion because

12   he is not an acceptable medical source.  ECF No. 24 at 17.  Plaintiff also argues

13   that the ALJ improperly discounted Mr. Clark's opinion that Plaintiff's poor work

14   history and inability to work is attributable to his antisocial disorder.  *Id.* at 18.

15   Instead, Plaintiff interprets his behavior as a diagnostic feature of his disorder.  *Id*.

16   Finally, Plaintiff faults the ALJ for relying on Dr. Schultz's malingering opinion,

17   and argues that Mr. Clark's opinions are not based on Plaintiff's subjective

18   complaints.  *Id.*

19        Here, the ALJ found that Mr. Clark is not an acceptable medical source, and

20   that his opinions are contradicted by the opinions of Dr. Bailey and Dr. Gentile

(both of whom are acceptable medical sources).  *See* Tr. 28.  The ALJ—noting that

Mr. Clark's July 25, 2008, opinion states that Plaintiff's behavior and aggression

resulted in poor prognosis in his ability to work—found that Plaintiff "typically

would stop work when he had enough money and did not want to work anymore

(C4F2)." Tr. 24, 234, 430-31, 474, 594-95.  The ALJ also found that Mr. Clark's

opinions are inconsistent with Plaintiff's activities, such as attending group

counseling, cohabitation, spending time with his children, and frequenting the

library, movies, church, and substance abuse classes.  Tr. 24-25, 27.  The ALJ

reasoned that this evidence, plus the fact that Plaintiff has never been terminated

because of social interaction, further support discounting Mr. Clark's contradictory

opinions.  Tr. 24-25.  Finally, the ALJ relied on Plaintiff's contradictory statements

minimizing his condition and declining treatment (Tr. 26), and Dr. Schultz's

malingering opinion (Tr. 25, 27), in deciding to limit Mr. Clark's opinions.  Tr. 24-

25.  The ALJ also found Mr. Clark's opinion unpersuasive that Plaintiff's

repetitive legal problems and his disregard for rules and regulations will continue

to impact his ability to work.  Tr. 27.

Medical sources such as social workers and therapists, are not "acceptable

medical sources;" rather, these sources are more appropriately characterized as

"other sources" and their opinions may be properly discounted if the ALJ provides

"germane reasons" for doing so.  SSR 06–03p, 2006 WL 2329939, at *2 (therapists

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

are not "acceptable medical sources"); *Molina,* 674 F.3d at 1111.  Such "other

source" opinions "must be evaluated on the basis of their qualifications, whether

their opinions are consistent with the record evidence, the evidence provided in

support of their opinions, and whether the source has a specialty or area of expertise

related to the individual's impairment." SSR 06-03p, 2006 WL 2329939, at * 4.

  The Court finds the ALJ provided germane reasons for discounting Mr.

Clark's opinions.  First, the ALJ reasonably afforded greater weight to the opinions

of Drs. Bailey and Gentile, both of whom are acceptable medical sources.  *See* SSR

06-03p, 2006 WL 2329939, at *5 ("The fact that a medical opinion is from an

'acceptable medical source' is a factor that may justify giving that opinion greater

weight than an opinion from a medical source who is not an 'acceptable medical

source' because, as we previously indicated . . . 'acceptable medical sources' 'are

the most qualified health care professionals.'").

  Second, the ALJ found that Mr. Clark's opinions were contradictory to

Plaintiff's activities, the medical records indicative of sporadic complaints, work

history, the reason for terminating employment, and the longitudinal record as a

whole.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

2004) ("[A]n ALJ may discredit treating physician's opinions that are conclusory,

brief, and unsupported by the record as a whole . . . or by objective medical

findings.").

1    Third, noting that both of Mr. Clark's opinions relied (at least, in part) on

2    Plaintiff's subjective reporting, the ALJ did not err because he determined that

3    Plaintiff's reporting is inconsistent with the record, lacks credibility given Dr.

4    Schultz's malingering opinion, and given Plaintiff's crimes of dishonesty.  Tr. 22,

5    25; *see Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("An ALJ may

6    consider a range of factors in assessing credibility, including (1) ordinary

7    techniques of credibility evaluation, such as the claimant's reputation for lying,

8    prior inconsistent statements concerning the symptoms, and other testimony by the

9    claimant that appears less than candid; (2) unexplained or inadequately explained

10    failure to seek treatment or to follow a prescribed course of treatment; and (3) the

11    claimant's daily activities.") (internal quotation marks and citations omitted);

12    *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 602 (9th Cir. 1999)

13    (stating that "questions of credibility and resolutions of conflicts in the testimony

14    are functions solely of the Secretary").  Accordingly, because the ALJ provided

15    germane reasons for rejecting Mr. Clark's opinion, the Court does not find error.

16    **3.  Russell Anderson, M.S.W.**

17    Plaintiff next faults the ALJ for according little weight to social worker

18    Russell Anderson, M.S.W.'s opinion that Plaintiff had marked limitation in

19    multiple domains of mental functioning.  ECF No. 24 at 20-21; Tr. 26.  Again,

20    Plaintiff argues that the ALJ improperly rejected Mr. Anderson's opinion because

1  he is not an acceptable medical source. ECF No. 24 at 20.  Plaintiff also argues that

2  the ALJ incorrectly found that Mr. Anderson's opinion "relied heavily" on

3  Plaintiff's subjective reporting, and ignored evidence showing that Mr. Anderson

4  relied on his own observations of Plaintiff.  *Id.* at 20-21.

5          The Court finds that the ALJ provided germane reasons for discounting Mr.

6  Anderson's opinions.  The ALJ reasonably afforded greater weight to the opinions

7  of Drs. Bailey and Gentile, both acceptable medical sources.  *See* SSR 06-03p,

8  2006 WL 2329939, at *5.  Moreover, the ALJ found that much of Mr. Clark's

9  opinion was based on Plaintiff's subjective reporting, *see* Tr. 26, despite Plaintiff's

10  interpretation to the contrary, *see* ECF No. 24 at 21.  Therefore, the ALJ rejected

11  Mr. Clark's opinion in reliance on Dr. Schultz's opinion that Plaintiff is

12  malingering.  *See Morgan*, 169 F.3d 595 at 602.

13          The ALJ provided several additional reasons for discounting Mr. Anderson

14  testimony. Tr. 26.  The ALJ found that "although the claimant endorsed manic

15  symptoms and psychosis during his evaluation with Mr. Anderson, the claimant

16  did not report any such symptoms during his earlier appointment with Dr.

17  Schultz." *Id.*  The ALJ also found Mr. Anderson's opinion regarding Plaintiff's

18  GAF score and marked limitation internally inconsistent with Mr. Anderson's

19  statement that Plaintiff could perform work where it is solitary and where he does

20  not have to interact with many people.  *See* Tr. 26.  As a result, the ALJ found no

1   support for Mr. Anderson's statement that Plaintiff may require a sheltered

2   environment due to anxiety.  *Id.*

3        As such, the Court determines that the ALJ did not err in discounting Mr.

4   Anderson's opinion because the ALJ's decision is supported by several germane

5   reasons.

6        **4.  Andres Laufer, M.D.**

7        Next, Plaintiff argues that the ALJ erred in rejecting medical evidence

8   related to Plaintiff's physical limitations.  *See* ECF No. 24 at 21.  Plaintiff argues

9   that the ALJ rejected treating physician Andres Laufer, M.D.'s opinion that

10  Plaintiff is limited to sedentary work with his right hand due to a severe right

11  thumb flexor tendon injury.  *Id.*  Plaintiff argues that the ALJ improperly

12  discounted Dr. Laufer's opinion because Plaintiff worked for a short time for the

13  Port of Tacoma and his examination of the lower extremity was normal.  *Id.* at 22.

14       Plaintiff argues that the ALJ erred in finding his Port of Tacoma job

15  conflicted with Dr. Laufer's opinion.  *Id.* at 22-23.  Plaintiff also argues that the

16  ALJ did not evaluate "Dr. Laufer's opinion for the period from 2008 to 2011" and

17  that the record does not show that the physical demand at Port of Tacoma exceeded

18  the limitations opined by Dr. Laufer nor whether the work was done one-handed.

19  *Id.* at 23.

20

The ALJ accorded "some weight" to Dr. Laufer's opinion consistent with the ALJ's conclusion that Plaintiff can perform light work.  Tr. 22.  The ALJ found that the overall evidence indicates that Plaintiff "can lift and carry up to 20 pounds occasionally and 10 pounds frequently with both the right and left hand."  Tr. 23. In other words, Dr. Laufer's opinion that Plaintiff has restrictions only in the right hand is contrary to the ALJ's finding that he can lift and carry with both hands. *See* Tr. 23.

The ALJ found that following Dr. Laufer's 2008 opinion, Plaintiff worked for a number of months at the Port of Tacoma in 2011 unloading railroad cars, a job that the ALJ determined requires at least light exertional lifting and carrying. Tr. 23.  Contrary to Plaintiff's argument that the ALJ found that the Port of Tacoma job exceeded the limitations opined by Dr. Laufer, the ALJ did not make that determination.  *See* Tr. 23.  Rather, the ALJ noted that Plaintiff was able to perform that job until he sustained a right shoulder injury.  *Id.*  The ALJ also did not reject Dr. Laufer's opinion because Dr. Laufer's found no abnormalities in Plaintiff's lower extremities.  Tr. 23.  The ALJ merely stated that the finding did not corroborate Plaintiff's allegations of severe limitations in his ability to stand and walk. Tr. 23.

Given that the ALJ found inconsistencies as to Dr. Laufer's opinion that Plaintiff has restrictions only in the right hand given Plaintiff's ability to lift and

carry with both hands and his subsequent employment with Port of Tacoma, the Court finds that the ALJ did not err in limiting Dr. Laufer's opinion.  *See Batson*, 359 F.3d at 1195.

### 5.  Alfred Scottolini, M.D.

Finally, Plaintiff argues that the ALJ improperly rejected state agency physician Dr. Scottolini's opinion that Plaintiff is limited to occasional handling and fingering, instead finding that Plaintiff is capable of frequent handling and fingering.  ECF No. 24 at 24; Tr. 23.

Plaintiff first argues that the ALJ relied on evidence of drug-seeking behavior related to one incident predating his disability onset date and a separate incident in September 2009.  As to the latter event, Plaintiff argues that the record shows that his mother exhibited drug-seeking behavior, not Plaintiff.  *Id.*  Plaintiff also disagrees with the ALJ's finding that Plaintiff has exhibited normal examination results of his right upper extremity.  Plaintiff argues that the ALJ's reliance on Plaintiff's activities are not clear and convincing reasons for rejecting Dr. Scottolini's uncontradicted opinion because the record is not clear as to the frequency or severity of those activities.  *Id.* at 25.

An ALJ must provide clear and convincing reasons for rejecting an uncontradicted opinion of a treating or an examining doctor.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Here, the ALJ did not reject Dr. Scottolini's

opinion as Plaintiff argues; rather, the ALJ accorded "some weight" to Dr. Scottolini's opinion.  Tr. 23.  In fact, the ALJ found that Dr. Scottolini's opinion as to Plaintiff's functioning is consistent with Plaintiff's activities, as well as the longitudinal medical evidence.  *Id.*

Notwithstanding, the ALJ also determined that Plaintiff retains the ability to perform frequent handling and fingering, contrary to Dr. Scottolini's finding.  *Id.* The ALJ found that Plaintiff's right thumb complaints are undermined by evidence of his drug-seeking behavior.  *Id.*; Tr. 19.  Plaintiff offers no support for his argument that the ALJ erred in considering drug-seeking behavior prior to his onset date.  Tr. 19, 456, 459.  In determining the weight to give to a medical source opinion, the ALJ may consider "*any* factors" that contradict the opinion. 20 C.F.R. § 416.927(c)(6) (emphasis added).  Moreover, Plaintiff's argument that the ALJ improperly attributed Plaintiff's mother's drug-seeking behavior to him is unavailing because the ALJ's cited support precisely confirms his finding.  *See* Tr. 19; *see also* Tr. 681 (stating "they are very assertive and manipulative," "they state they want percocet not vicodin," "they want percocet not vicodin," and "they want the 10 mg not 5") (emphasis added).  Nevertheless, Plaintiff cites to another report, *see* Tr. 680, that states that his mother demanded switching Vicodin to Percocet. *See* ECF No. 24 at 24.  However, it is within the ALJ's province to review and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27

interpret any conflicting evidence, and proffer his interpretation thereof.  *See*

*Garrison*, 759 F.3d at 1012.

The ALJ considered additional factors contradicting Dr. Scottolini's opinion.
The ALJ found that Plaintiff's physical examinations do not corroborate his right
thumb symptoms given that he displayed strong and equal motor strength during
physical examinations, as well as intact sensation, full range of motion, and normal
fine motor skills in the right upper extremity.  Tr. 19, 23, 547, 718, 723, 734, 1001,
1017, 1065; *see also* 20 C.F.R. § 416.927(c)(6).  Similarly, the ALJ found that
Plaintiff's activities (e.g., playing basketball, unloading cargo from railroad cars in
2011, janitorial work since November 2013) show that he can perform more than
occasional handling and fingering.  Tr. 23, 325, 1045.

For all of these reasons, the Court finds that the ALJ provided clear and
convincing reasons for limiting Dr. Scottolini's opinion.

**C. Vocational expert testimony**

Plaintiff argues that the ALJ improperly elicited testimony from the
vocational expert using hypotheticals that did not include all of Plaintiff's physical
limitations. ECF No. 24 at 26.  This argument is derivative of the arguments
Plaintiff raised above.

The Court has reviewed the ALJ's finding limiting Plaintiff to frequent
handling and fingering; no repetitive forceful gripping, grasping, or turning with

the right upper extremity; no frequent reaching in the right and left upper

extremities; no exposure to pulmonary irritants; and light exertional lifting.  Tr. 17,

19-20, 24.  The Court identified at least one hypothetical wherein the ALJ asked

the vocational expert whether an individual could do Plaintiff's past work if the

individual could do light work; could frequently handle and finger; would not be

required to forcefully grip, grasp, turn, or frequently reach; and would not be

exposed to fumes, odors, gasses, poor ventilation, hazards, among other

specifications.  *See* Tr. 102-103.  In other words, the ALJ included all of Plaintiff's

limitations.  Plaintiff's reliance on *DeLorne v. Sullivan*, 924 F.2d 841, 850 (9th Cir.

1991) is misplaced because, unlike here, the claimant in *DeLorne* had a depression

impairment which the *DeLorne* ALJ wholly failed to consider in the hypothetical.

　　　As explained above, the ALJ provided specific and legitimate reasons

supported by substantial evidence in rejecting Plaintiff's medical providers. As a

result, the inclusion of Plaintiff's limitations described in the ALJ's hypothetical

are sufficiently substantiated and complete.  Even if the ALJ failed to include all

physical limitations in a hypothetical—which, here, Plaintiff has failed to show—

such an omission may be harmless error if the ALJ's conclusions are supported by

other reliable evidence.  *See Matthews v. Shalala,* 10 F.3d 678 (9th Cir. 1993).

The Court finds that the ALJ met his burden at step five in showing that Plaintiff

was capable of past relevant work and other work in the national economy and not

disabled under the Social Security Act.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 24) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 27) is

        **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment

for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** January 18, 2017.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 30